# Stremme v. Dyer, Appellant.

*Trial—Charge of court—Harmless error—Negligence.*

1. On the trial of a negligence case defendant sought to establish a different cause for the accident than that asserted by plaintiff, denying that the trestle fell because of defective construction, and attributing its fall to negligent use of same by plaintiff and a fellow workman. In referring to this latter feature, the trial judge in his charge spoke of it as "the only defense set up in this case by the defendant." *Held*, that the connection in which the remark occurs in the charge, and the very full instructions given on the other question—the sufficiency of the trestle—prevented any misleading effect.

*Negligence—Fall of trestle—Evidence—Opinion of witness.*

2. In an action to recover damages for personal injuries caused by the falling of an alleged defective trestle, a witness for the plaintiff, a carpenter of experience, who had helped to cut and saw the timber used in the construction of the trestle, may testify that in his judgment the structure was unsafe, and this is the case although he may not have actually inspected the parts in place at the point where the structure broke.

3. In such a case a witness for defendant having testified to the strength of the trestle in question, was asked whether he had known in his own experience trestles to break in consequence of lateral pressure from cumulative deposits of earth upon one side of the structure. The question was disallowed on the ground that it did not appear that the conditions were the same; nor was it proposed to prove that they were. *Held*, that the evidence was properly excluded.

*Trial—Construction as to testimony—Recollection of testimony—Jury.*

4. Where the trial judge and counsel differ as to their recollection of the testimony, and the judge instructs the jury that it is for them to determine from their own recollection what the witness said, the judgment will not be reversed, even though the judge may have made a mistake in the facts.

*Negligence—Trestles—Defective work—Evidence.*

5. Where an issue in an accident case turns on the sufficiency of a trestle, and a witness testifies that there was very little cribbing and that the mud sills rested immediately upon the ground, it is proper for the court to instruct the jury to consider in connection with the sufficiency of the trestle the ground on which it was built and the character and foundation on which it rested.

Argued Oct. 16, 1908.   Appeal, No. 87, Oct. T., 1908, by de-

fendant, from judgment of C. P. Washington Co., May T., 1907, No. 178, on verdict for plaintiff in case of John T. Stremme v. John T. Dyer. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before TAYLOR, J.

The injuries complained of resulted from the fall of a trestle.

At the trial Geo. L. Gibson, a witness for plaintiff, was asked these questions:

"Q. What kind of tools did you use to cut off those poles? A. Cross-cut saw. Q. How did you measure the angle at which the batter ends were cut off? A. Guessed at it. Q. Did you have a square or any instrument? A. No, sir. Q. Well, did they fit accurately then? A. No, sir, some of them didn't and some of them did. Q. How much variation was there?"

Mr. Murdoch: I would like to know whether the witness is talking about the piece of trestle that fell down or some other.

"Q. You are referring entirely to this part of the trestle, to the part of the trestle that fell down? A. Yes, sir. Q. Now, in case the ends of those battered posts did not fit, how were they made to fit? A. How is that? Q. How were they fastened? A. Spiked them, as they could. Q. Now, describe how they failed to fit the cap and sill? A. Well, I don't know how them fit down there, I know some of them didn't fit very good other places."

Mr. Murdoch: There, if the court please, is just what I anticipated, that the witness is talking about something else all the time.

The Court: He said at this place where the trestle fell down.

Mr. Murdoch: I move that the witness's answer be stricken out as not responsive to the question and as referring to something that is irrelevant in the case.

The Court: I do not suppose the witness could identify these particular bents, but how was the three-legged trestle constructed, particularly at this point where it collapsed. Not strike it out, but direct the jury's attention to the place where the trestle fell and bill sealed for the defendant. [1]

" Q. Now, in case these poles failed to fit on account of the way in which you sawed them, tell the jury how they failed to fit? "

Mr. Murdoch: If he saw them.

" Q. Yes, the ones you saw that didn't fit at the ends? A. Well, we sawed some too much the one way and some too much the other, some would fit on the butt, and some would fit on the heel, and some were straight poles we sawed and some were a little crooked and would only set on one point and sawed this way too much, and you couldn't saw them perfectly without laying the line and taking a square."

Charles Nixon, a witness called and examined by the defendant, was asked these questions:

"Q. Did you ever see trestle broken in that way? A. By what way? Q. By the pressure of dumping too much earth on one side? A. Yes, sir. Q. In your own work? A. Yes, sir. Q. Where was the break?"

Objected to.

The Court: Let's keep other trestles out here, particularly on the question of break-down; take this trestle how it was constructed there at the point of accident and let the witness say, with his knowledge of this kind of business, whether it was sufficient to sustain the admitted weight there was upon it.

Mr. Bane: I move to strike out the answer that the witness gave.

Mr. Murdoch: Let me ask my question and if it is improper then you can strike out the other. I want to ask him this question, if the opinion that he has expressed of the effect of excessive dumping on one side is based on theory or upon actual observation in other places.

Objected to.

The Court: That simply goes to the competency of the witness to express an opinion, to his qualification.

Mr Bane: We move to strike out his answer that he has seen other instances where it has broken.

The Court: I think we will strike it out and seal a bill for the defendant, for the reason that that involves other trestles and would necessarily involve the construction of that trestle and

which is not shown to be like this or different, and seal a bill for the defendant. [2]

The court charged in part as follows:

[But we have given you the law of contributory negligence and what must result by way of the verdict of a jury where they find that, even though they find that the defendant was negligent, if they find that there was any contributory negligence upon the part of the plaintiff. They do not claim that by way of defense, gentlemen of the jury, but they claim that he was injured, not by the defendant's negligence, but by the negligence of a fellow workman, a fellow servant, as they call it, and that, gentlemen of the jury, I may say is the only defense set up in this case by the defendant.] [3]

[Now, on the law of the case, gentlemen of the jury, that applies to the facts in this case, to that principle, because that is the defense here, if Murphy, the dump boss there that morning who dumped this dirt there, dumped the dirt all on one side without any knowledge of Gucker or Skelly, who were there, when he had orders and knew as a matter of fact that it had to be equalized, dumped equally on one side and the other, that Murphy violated orders there and Gucker was not there to see that he was violating orders and stop him, and this trestle fell down by reason of the claim that the defendant makes,—the pressure from the dirt being all dumped on one side as they claimed that morning, that would be a negligent act of Murphy, who was a fellow workman along that trestle in different lines of work along with Stremme, the plaintiff in this case. The plaintiff says that those are not the facts in the case. That the doctrine of a coworker or fellow servant here as between Stremme and Murphy does not apply; even if Murphy did dump it all on one side against directions, or, that it was not dumped in a way a skilled foreman ought to have done and he ought to have known better, they say that Gucker was present there and could have seen; that Skelly was there and could have seen that, if it was being dumped all on one side, and they ought to have known that it was not the proper way, and if they were there and saw Murphy dumping it all on one

side, then it would be their business to check him and order him to dump on both sides. The plaintiff claims that they were not only there but they were near there ánd saw that, and I believe Mr. Gucker himself said that he was there and saw how the dirt had been dumped that morning. The plaintiff claims further—

Mr. Murdoch: It is my duty to tell you that Mr. Gucker didn't say so. The Supreme Court says that this is the point where I must make my objection.

The Court: It seems there is a great dispute about evidence here. Our recollection—

Mr. Bane: Mr. Gucker stated that he was out near the end of the four leg trestle.

The Court: [" I was there that morning and saw the trains being dumped," is what I have Mr. Gucker saying, but we say, gentlemen of the jury, to you, that it is your recollection of what the testimony is that controls; where the counsel, or the court do not recollect the testimony the same way, it is up to the jury to say what a particular witness said and their recollection goes and the court's and the counsel's are by you disregarded.] [4]

[The ground over which this trestle was built, that is at the place of the accident, is a matter that should be taken into consideration by a jury, what kind of earth was immediately under the mud sills, that entered into the construction of the trestle, what was the condition of the ground, was it hard so as the mud sill could lie on the ground itself, only required to be level, or was it soft so that it required a foundation when the weight would come upon it and would not sink into the ground; was it uneven at one end and blocked up at the other by pieces of wood to make the bent level and the mud sill level so the bent which was built upon it would be level? Was it high ground or low ground? was it clay? what was the character of it? because it is a very important matter in the consideration of a case of this kind to determine what the foundation on which the superstructure was dependent, especially when the superstructure went. down and you are trying to arrive at the causes of it.] [5]

[If you find, gentlemen of the jury, under all the evidence in the case that Murphy is the man that is responsible for this accident and that he was violating not only orders but he was doing this thing in a negligent manner that his judgment ought to have told him better, why then your verdict would be for the defendant, that is if you find that it was Murphy's negligence that injured the plaintiff. On the other hand, if you find that it was not Murphy's negligence or that Murphy's negligence would be Dyer's or Gucker's negligence by virtue of what he has already said about him being there or about what passed between him and Murphy just before the accident, if Gucker was there and saw the dirt being unloaded on one side and made no objection to it and that the trestle was insufficient, whether it fell from that cause or not, to sustain the weight put upon it, then you would pass to the next question and find how much you would allow the plaintiff by way of pecuniary compensation for the injury he has sustained.] [6]

Defendant presented these points:

4. If the evidence shows that the trestle would not have fallen except for the fact that Murphy, as dump foreman, dumped too large an amount of wet earth against one side of the trestle, the verdict must be in favor of the defendant. *Answer:* That is affirmed, if the jury further find that the superintendent, Mr. Gucker, did not tell Murphy, the dump foreman in charge of the plaintiff's dump train, to dump on the side he had been dumping the morning of the accident till noon and then change the platform for dumping to the other side, or unless the jury further find that the superintendent, Gucker, was not present the morning of the accident when the dirt was being dumped there. [7]

5. If the jury find from the evidence that Murphy, the dump foreman, in charge of the dump on the morning when the accident happened, either through mistake or carelessness on his part, put an undue strain upon the trestle by improperly dumping all the earth against one side of it, and that the earth was of such a nature that being so dumped it endangered the safety of the trestle, and further find that by reason of so doing the trestle was affected in such way as to cause the acci-

dent, then the jury are instructed that in such a state of facts the defendant, John T. Dyer, would not be responsible for the injury caused thereby and that if they so find the verdict must be in favor of the defendant.  *Answer:* That is affirmed, gentlemen of the jury, if the jury find that Mr. Gucker had no knowledge that the earth was being dumped there in the morning and could not have had under the circumstances and if he had no knowledge or had this conversation with Murphy, and you should find as Gucker testified.

These two points, gentlemen of the jury, the fourth and fifth, we think we have covered them in our general charge, but in order that you may fully understand them they are simply this: that if Gucker had no knowledge or under the circumstance reasonably could not have had any knowledge that Murphy was dumping all that dirt that morning on one side, then it was Murphy's fault that this thing went down, if it went down from dumping too much earth on one side, and Dyer would not be liable, because that would be the negligence of a fellow workman.  But the point is here, if Gucker was present there that morning, the man that was representing Dyer, the defendant in this case, and saw Murphy dumping all on one side, which he now gives as the reason why this trestle went down and that it would not stand the dumping all on one side, then it would be for you to say whether or not Gucker did not allow something to be done that under the circumstances with his knowledge of what would necessarily occur, taking from what he now says, and he remained silent and did not correct Murphy but allowed it to go on, then he would have knowledge of Murphy's negligent act and if he did not call him to account for it and stop it before the real injury resulted, why he would have knowledge of one of his employees doing a negligent act and it would be his duty under the circumstances as a matter of law, if that was a fact, to call him to account before anything happened.  But you could not hold Gucker accountable for that if he was not there or, if he was there, had no knowledge that this earth was being dumped on one side, and the trestle went over for that reason, why then he having employed a competent man in the first place, you

would have to first bring knowledge home to him that the man he employed was acting in a negligent manner. I think we have made that clear, gentlemen of the jury. [8]

Verdict and judgment for plaintiff for $5,975. Defendant appealed.

*Errors assigned* were (1, 2) rulings on evidence, quoting the bill of exceptions; (3–8) above instructions, quoting them.

*John H. Murdoch,* with him *Edgar B. Murdoch,* for appellant.

*Andrew M. Linn,* with him *John C. Bane,* for appellee.

OPINION BY MR. JUSTICE STEWART, January 4, 1909:

The plaintiff, a railroad engineer, was put in charge by the defendant of an engine employed in hauling cars loaded with earth from one point where it was excavated, upon and over a temporary trestle, to a dumping ground at either side of the trestle. On this particular occasion, as the train of cars his engine was hauling reached the place where the earth was to be discharged, the trestle gave way, and engine and cars were precipitated to the ground below. In the accident plaintiff received the injuries for which he seeks to recover. The negligence charged was faulty and improper construction of the trestle, which rendered it inadequate for the purpose intended, and therefore unsafe and dangerous for those employed thereon. The evidence on part of the plaintiff was directed wholly to the construction of the trestle, and developed no other cause to which the collapse could be referred. That this evidence would be sufficient to support an inference that the collapse was in consequence of defective construction of the trestle, must be admitted. The effort on part of defendant was, in the first place, to rebut any such inference by adducing evidence to show that the trestle was constructed in accordance with the design most generally adopted and approved, of sound material, of such dimensions as are ordinarily used in such structures, and that it was fully adequate for the purpose for which it was intended; and, second, to show that what caused the fall of the trestle

was an excessive lateral pressure resulting from the negligence of a fellow workman in discharging the contents of the cars continuously upon the one side next the higher ground, leaving the other side without any embankment to resist.  That this evidence would support the inference sought to be drawn from it must also be admitted.  It thus appears that there were two distinct lines of defense: one that the trestle was not defective, but safe; the other, that what caused the accident was excessive lateral pressure occasioned by negligence for which defendant was not responsible.  The defense was pressed on both lines with equal earnestness.  In submitting the case to the jury the learned trial judge first adverted in his charge to the claim made by defendant, that the proximate cause of the accident was the dumping the earth exclusively upon the one side of the trestle.  Plaintiff had contended that even though this was the cause of the accident, the negligence was chargeable to defendant's superintendent; while the defendant contended that it was chargeable to the dumping boss who stood in the fellow servant relation.  In referring to this aspect of the case, after having explained the law as to contributory negligence, the learned trial judge used this language, "They (counsel for defendant) do not claim that (contributory negligence) by way of defense, but they claim that he was injured not by defendant's negligence, but by the negligence of a fellow workman, a fellow servant as they call it, and that, gentlemen of the jury, I may say is the only defense set up in this case by the defendant."  The language here used is assigned for error in the third specification.  Appellant contends that the jury could only understand from it, that they were relieved from considering the evidence of defendant which bore upon the sufficiency of the trestle; and that but one defense was insisted upon, that being that the proximate cause of the accident was chargeable to the negligence of a fellow servant.  It is not too much to say that the objection is hypercritical.  The ordinary mind would not be likely to misunderstand the meaning of the trial judge in this connection.  He had given the jury clearly to understand that it was for them to determine what the proximate cause of the accident was, and it was in the

course of his instructions as to the law they should apply in case they found that the accident happened according to the theory of defendant, that the remark complained of was made. In the event of their so finding, it would be literally true that the only defense set up at all applicable in that view of the case, would be that the negligence, the cause of the accident, was that of a fellow servant. But even though the language was susceptible of a different application by the jury, what was meant was made so abundantly clear by succeeding portions of the charge, in which the whole matter of the sufficiency of the construction of the trestle was considered, that if any misunderstanding had existed as to the true import of the expression complained of, it must have been corrected. The charge upon this specific question covers no less than four pages of the paper-book, and is a full and careful review of the evidence on both sides. It is impossible to believe that any prejudice could have resulted to the defendant from the language complained of.

2. A witness for the plaintiff, a carpenter of experience, who had helped to cut and saw the timber used in the construction of the trestle, testified that in his judgment the structure was unsafe. He described the kind of timber used, the way it was prepared, and the manner in which it was fastened. One principal defect, in his judgment, was that the batter posts did not fit accurately in the cap and sill. Although the witness had not inspected those in place at the point where the structure broke, yet he was allowed under objection to speak of this defect which he had observed in those parts he had examined. Evidently the witness' opinion was based quite as much upon the knowledge he had of the character of the timber used and the way it was prepared, as upon what he saw of them when in place. This is clearly indicated in his testimony as to the work he had himself done in preparing the timber. He says that the batter ends were not cut off by any square, at any particular angle, but by guess, with the result that some of them were uneven and could only be made to fit by spiking them down. This evidence was properly admitted.

3. A witness for defendant of large experience having tes-

tified to the strength of a trestle built according to the design used here, was asked whether he had known in his own experience trestles to break in consequence of lateral pressure from accumulated deposits of earth upon one side of the structure. The question was disallowed on the ground that it did not appear that the conditions were the same as here. Nor was it proposed to prove that they were. To introduce evidence of this kind, and thus put upon the other side the burden of showing that the conditions were not the same, would be to disregard the plainest rules of evidence.

4. Accepting defendant's theory as to the cause of the accident, a most important inquiry would be—was it the negligence of defendant's superintendent, or that of the dumping boss, that occasioned it? When discussing this feature of the case in the general charge, the trial judge referred to the testimony of the former and stated that he had admitted that he had been there (on the trestle) that morning, and saw the trains being dumped. The correctness of this being challenged, the judge referred at once to his notes of testimony, and said that it there appeared as he had stated it; but he immediately added, addressing the jury, "it is your recollection that controls when the court or the counsel do not recollect the testimony the same way. It is upon the jury to say what a particular witness said, and their recollection goes, as the court and counsel are by you disregarded." Assuming that the testimony of the witness had been inaccurately stated by the court— and an examination of the record inclines us to think that such was the case—yet the instructions to the jury to determine from their own recollection what the witness said was so explicit, that the jury could not have failed to understand their own responsibility in the matter. They had before them the opposing versions of the testimony as presented by the court and counsel, and were instructed to resolve the question by their own recollection, in disregard of what was asserted by either. If there was a misstatement of fact, the mistake was corrected.

5. The jury was instructed to consider in connection with the sufficiency of the trestle the ground on which it was built,

and the character of the foundation on which it rested.  In view of the testimony of the witness McKinley that there was very little cribbing, and that the mud sills rested immediately upon the ground, it was entirely proper to direct the attention of the jury to this feature.  What weight was to be given the circumstance alluded to was for the jury, and the court so left it.  We have considered all the assignments of error, and upon a full review of the case we find nothing that calls for a reversal.

The judgment is affirmed.